UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES F. TUNNELL JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:17-cv-2275-WTL-MJD |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner for Operations, Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Charles Tunnell Jr. requests judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations of the Social Security Administration ("Deputy Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Tunnell protectively filed his application on February 3, 2014, alleging onset of disability on the same date. The Social Security Administration ("SSA") initially denied Tunnell's application on April 16, 2014. After Tunnell timely requested reconsideration, SSA again denied his claim on September 8, 2014. Thereafter, Tunnell requested a hearing before an

---

[1] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

Administrative Law Judge ("ALJ"). An ALJ held a hearing on June 30, 2016, at which Tunnell, a medical expert, Dr. Ronald Kendrick, and a vocational expert ("VE") testified. The ALJ issued his decision denying Tunnell's application on July 19, 2016. After the Appeals Council denied Tunnell's request for review on May 9, 2017, Tunnell filed this action seeking judicial review on July 3, 2017.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the Deputy Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(b).

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(c). At step three, the Deputy Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the

impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. **THE ALJ'S DECISION**

The ALJ found at step one that Tunnell had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ determined that Tunnell had the severe impairments of lumbar spondylosis and obesity. The ALJ found at step three that these impairments did not, individually or in combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform sedentary work as

3

defined in 20 CFR 404.1567(a) and 416.967(a) except he is further limited to occasional bending, stooping, kneeling, crawling, and climbing stairs, with no climbing of ladders, ropes or scaffolds.

Record at 23-24. The ALJ concluded at step four that Tunnel was incapable of performing his past relevant work as a mechanic. At step five, the ALJ found, based on VE testimony considering Tunnell's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that he could perform. Accordingly, the ALJ concluded that Tunnell was not disabled.

## V. **DISCUSSION**

Tunnell argues that the ALJ erred in two respects, which the Court addresses, in turn, below.

### A. Subjective Statements of Pain

Tunnell contends that the ALJ improperly found that his subjective statements of pain were inconsistent with the record. Specifically, Tunnell argues that while the ALJ applied the proper ruling and regulatory factors, the only reason given for discrediting his pain symptoms was that they were not consistent with the objective medical evidence.

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

On March 28, 2016, Social Security Ruling 16-3p became effective, replacing SSR 96-7p, and provided new guidance regarding how a disability claimant's statements about the

4

intensity, persistence, and limiting effects of symptoms are to be evaluated. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). With regard to the evaluation of subjective symptoms, the ruling describes longstanding policy that:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304 at *4 (Oct. 25, 2017); *see Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("And so 'once the claimant produces medical evidence of an underlying impairment, the [Deputy] Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.'")). "A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304 at *5.

The Court agrees with Tunnell that the ALJ failed to offer any additional reason for discounting his subjective statements beyond his belief that Tunnell's symptoms were not verified by objective testing. "In sum, the objective medical evidence does not support the claimant's alleged symptoms of pain and its limiting effects. Specifically, the claimant's allegations are inconsistent with the clinical signs throughout the record . . ." R. at 28. The Seventh Circuit has made it abundantly clear that disability determinations cannot be based entirely on the results of medical tests. *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) ("Such a rule would flout the Social Security Administration's regulation that we quoted earlier.").[2]

In fact, with the exception of the clinical signs cited by the ALJ, the Court reads the decision to uniformly support Tunnell's subjective statements. The ALJ referenced Tunnell's description of his daily activities to be limited by pain, including housework and former hobbies. R. at 24. The ALJ noted that Tunnell had made similar complaints to his treating physician, Dr. Duncan, about his ability to perform housework being precluded by uncontrolled pain. R. at 27. The ALJ appeared to conclude that Tunnell's description of daily activities was supportive of his subjective statements, noting "[a]lthough the claimant's activities are not extensive, evidence regarding the claimant's daily activities is not sufficient to establish that he is unable to function at the level assessed in this decision." R. at 30-31. However, "the ALJ cannot reject a claimant's testimony about limitations on [his] daily activities solely by stating that such testimony is unsupported by the medical evidence." *Indoranto v. Barnhart*, 374 F. 3d 470, 474 (7th Cir. 2004). When there is a severe impairment that could provide the basis for complaints of pain, as here, it is not enough for the ALJ to demonstrate that he has considered those

---

[2] *Adaire* referenced SSR 96-7p in the decision, but the passage from the rescinded ruling is nearly verbatim to language used in the new SSR 16-3p quoted above. *See Adaire*, 778 F.3d at 687.

complaints using the applicable factors, he must demonstrate with substantial evidence that those complaints are actually inconsistent or incredible based on the record. *See id.* at 474-75 (7th Cir. 2004).

Likewise, the ALJ described the treatment options that Tunnell had attempted to address his pain. The ALJ noted that Tunnell had undergone a surgical procedure to permanently implant a spinal cord stimulator. R. at 25. Tunnell was initially pleased with the relief he got from the device. However, the ALJ noted that Tunnell "returned to work but endorsed significant low back pain during working hours." R. at 25. The Court agrees with Tunnell that the ALJ should have considered that "a claimant's dogged efforts to work beyond his physical capacity would seem to be highly relevant in deciding [his] credibility and determining whether [he] is trying to obtain government benefits by exaggerating [his] pain symptoms." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). In addition to attempting to return to work after the placement of the spinal cord stimulator, the record shows that Tunnell had a solid work history with earnings in every year from 1989 through 2013. R. at 242. However, the ALJ did not acknowledge Tunnell's work history in evaluation of his credibility. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (internal citation omitted) ("[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

Moreover, the medical expert testified that the record showed that the stimulator needed to be removed due to either being ineffective to control pain or mechanically inoperable. R. at 43. The ALJ also noted that Tunnell's "back impairment is not operational," R. at 27, by which the Court assumes he meant it could not be improved by surgery. The ALJ noted that Tunnell had also tried pain medication, injections, physical therapy, a TENS unit, ice packs, and lying

7

flat.³ Again, the ALJ appears to conclude that the evidence is supportive of Tunnell's subjective statements, but not conclusive of disability. "Evidence regarding his medication and other treatments confirms the existence of many impairments and functional limitations. It does not, however, establish an inability to work at the level assessed in this decision." R. at 29. As Tunnell points out, the ALJ's decision shows a pattern of failing to consider certain factors that support the credibility of Tunnell's statements, including his work history and an effort to return to work after having a spinal cord stimulator implanted, while considering other factors, including methods of treatment pursued and limitations of activities of daily living, but ultimately dismissing them when making his credibility determination. It was improper for the ALJ to dismiss the factors that support Tunnell's subjective complaints solely on the basis that they are not objectively verified by the medical signs and testing.

Despite Tunnell's efforts to remedy his pain with treatment, he testified that his pain is consistent and the severity is always the same. When asked why his physician stated he has good or bad days, he testified that his medications are not always effective and that his medication dosage was recently increased.⁴ He further testified that when his medications are not working as well, he has to lie flat and apply ice. "A claimant's subjective testimony

---

³ The Deputy Commissioner argues that the ALJ reasonably described the treatment as conservative, citing cases referring to the use of pain medication, injections, and physical therapy. The Deputy Commissioner's argument overlooks that Tunnell also went through an invasive procedure to have a spinal cord stimulator implanted, for one. More importantly, the ALJ never described Tunnell's treatment as conservative or used the level of treatment as a reason to discount his credibility. "Under the *Chenery* doctrine, the [Deputy] Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)).

⁴ The Deputy Commissioner also argues that Tunnell's testimony was inconsistent about his reports of his pain, first saying it was consistent in severity and then saying he had good and bad days based on the effectiveness of his medication. While the ALJ noted the testimony on both points, R. at 24-25, the ALJ never stated that he found Tunnell's testimony to be inconsistent, let alone that the inconsistency was a basis of his credibility determination. *See Kastner*, 697 F.3d at 648 (*Chenery* Doctrine).

supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Carradine*, 360 F.3d at 753 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam) (citations omitted)). The Court does not find any permissible reason to discount Tunnell's subjective statements of pain articulated in the ALJ's written decision. Accordingly, the Court finds that remand is necessary for further evaluation of Tunnell's subjective statements, including the credibility of his complaints of pain.

### B. Treating Source Opinion

Tunnell also argues that the ALJ improperly weighed the opinion of his treating physician, Dr. Duncan. The Court need not fully address the argument, as the ALJ's evaluation of Dr. Duncan's opinion is completely intertwined with the issue above that the Court has already determined requires remand. The ALJ concluded that "[l]ittle weight can [be] given to Dr. Duncan's opinion, as it is not consistent with the objective medical findings in the record, which note normal strength, normal gait, and intact motor and sensory systems. Moreover, greater weight is given to Dr. Kendrick's opinion for the reasons stated above." R. at 29-30. However, even Dr. Kendrick, the orthopedic surgeon who testified at the hearing as a medical expert, noted that he did not have any basis to disagree with Dr. Duncan's opinion. R. at 45. Dr. Kendrick conceded that the main issue in the claim was the effects of pain and testified that there was no objective testing to verify the subjective levels of pain that one experiences. The ALJ noted this testimony and Dr. Kendrick's further testimony that Dr. Duncan's opinion appeared to be based on subjective complaints. However, opinions derived from subjective reports are not automatically suspect. *See Adaire*, 778 F.3d at 688. Furthermore, the ALJ himself noted contemporaneous treatment notes in which Tunnell reported to Dr. Duncan ongoing eight out of ten pain and the inability to perform household chores. R. at 27. The Court cannot find any

9

other basis articulated in the ALJ's decision to prefer the reviewing physician's opined limitations over the treating physician's other than the ALJ's belief that the objective testing did not support the latter opinion and that neither opinion could be conclusive on the issue. Dr. Duncan's treating opinion should be reconsidered on remand along with the underlying basis for it, Tunnell's subjective complaints of pain.

## VI. **CONCLUSION**

For the reasons set forth above, the decision of the Deputy Commissioner is **REVERSED** and this case is **REMANDED** to the Deputy Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 5/31/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication